UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED SPECIALTY INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>CONCEPCION SILVA, et al.,<br><br>Defendants. | Case No.17-cv-07231-JSC<br><br>**ORDER RE: PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 53 |

Plaintiff United Specialty Insurance Company filed this civil action seeking declaratory and equitable relief regarding its responsibilities to defend and indemnify Defendant Concepcion Silva in wrongful death actions pending in the San Francisco Superior Court. Plaintiff moves for summary judgment contending that its owes no duty to defend or indemnify Silva because the underlying insurance policy contains an assault and battery exclusion.[1] (Dkt. No. 53.) Having considered the parties' briefs and having had the benefit of oral argument on December 13, 2018, the Court GRANTS summary judgment for Plaintiff. The plain language of the assault and battery exclusion applies to bar coverage for the underlying claims.

**BACKGROUND**

On May 28, 2017, Alvaro Palma was shot and killed by David Sanchez, a security guard,

---

[1] All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 8, 26, 29, 31.)

1  at or near La Oficina Bar in San Francisco. (Second Amended Complaint (Dkt. No. 50) at ¶ 13. [2])
2  Concepcion Silva owns the premises on which the bar is located. (*Id.*) The bar is owned and
3  operated by Jose Escolero Bonilla. (*Id.*) Following Mr. Palma's death, his family brought two
4  actions in the San Francisco Superior Court. (Dkt. No. 53-1 at ¶¶ 5, 9.)

**A. The State Court Actions**

**1) The *Ramirez* Action**

On June 7, 2017, Mr. Palma's surviving spouse, Griselda Ramirez, and their three minor children, filed an action for wrongful death against Mr. Bonilla, Ms. Silva, and Mr. Sanchez. (Dkt. No. 54-2 at 62 (Ex. 2).[3]) The complaint alleges that on the evening of May 28, 2017, Mr. Palma went with friends to La Oficina Bar and that when they attempted to obtain entry to the bar Mr. Sanchez, who was working the door as a security guard, interfered with their entry. (*Id.* at ¶¶ 7-9.) Mr. Palma and his friends attempted to engage Mr. Sanchez in conversation when, without provocation, Mr. Sanchez shot Mr. Palma two times in the face. (*Id.* at ¶¶ 10-11.) Mr. Palma fell to the ground and subsequently died from his injuries. (*Id.* at ¶ 12.) The complaint also alleges that Mr. Sanchez was carrying drugs for sale at the time of the incident and had a history of brandishing his weapon and/or acting in a threatening manner during the course of his employment, and that Mr. Bonilla and Ms. Silva should have known he was a danger to third parties. (*Id.* at ¶¶ 14-16.)

The *Ramirez* complaint pleads four causes of action: negligence, negligent supervision and hiring, wrongful death/negligence per se, and wrongful death/battery. (*Id.*) Only the negligent supervision and hiring, and wrongful death/battery claims were pled against Ms. Silva. The

---

[2] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

[3] Plaintiff requests that the Court take judicial notice of filings from the underlying state court actions. (Dkt. No. 54.) Pursuant to Federal Rule of Evidence 201, "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *See also United States ex. rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) ("we may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to the matters at issue.") Accordingly, the Court GRANTS the Plaintiff's unopposed Request for Judicial Notice as to Exhibits 2, 4, 6, and 8 which are part of the public record and easily verifiable.

2

*Ramirez* complaint was subsequently amended to add a claim for premises liability as to Mr. Bonilla and Ms. Silva. (Dkt. No. 54-2 at 82 (Ex. 4).)

### 2) The *Palma* Action

On August 15, 2017, Mr. Palma's parents Zoila Melgar and Francisco Palma filed a wrongful death action against Mr. Bonilla, Mr. Sanchez, and Ms. Silva. (Dkt. No. 54-2 at 102 (Ex. 6).) The allegations of the *Palma* Action are substantially the same as the *Ramirez* Action, but also include allegations that Mr. Sanchez was not qualified to carry a firearm, was not properly skilled or licensed to perform his duties, and that he shot Mr. Palma with a concealed weapon. (*Id*. at ¶¶ 10-14.) The *Palma* Action pleads four claims for relief: negligence, negligent supervision and hiring, negligence per se, and wrongful death/battery. (*Id*.) Only the negligent supervision and hiring, and wrongful death/battery claims were pled against Ms. Silva. The *Palma* Action was amended nearly a year later to also plead a claim against Marco Meza, Ms. Silva's son, who is also alleged to be involved in Silva's business operations. (Dkt. No. 53-1 at ¶¶ 11-12; Dkt. No. 54-2 at 119 (Ex. 8).)

## B. The United Specialty Insurance Policy

United Specialty Insurance Company issued commercial insurance policy number USA4144946 to Concepcion Silva as the named insured covering the period September 19, 2016 to September 19, 2017 ("the Policy"). (Dkt. No. 53-1 at ¶ 4; Dkt. No. 54-2 (Ex. 1).) Under the commercial general liability coverage part of the Policy, Plaintiff is obligated to:

> [P]ay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. [United Specialty] will have the right and duty to defend the insured against any "suit" seeking those damages. However, [United Specialty] will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

(Dkt. No. 54-2 at 16 (Ex. 1, Sec. I.1.a).)

The Policy includes an endorsement which is entitled: "EXCLUSION – ASSAULT AND BATTERY." (*Id*. at 48 (Ex. 1).) The exclusion states that it "modifies insurance provided under the following: COMMERCIAL GENERAL LIABILITY COVERAGE PART." (*Id*.) The exclusion states in full:

1. This insurance does not apply to "bodily injury", "property damage", or "personal and advertising injury" arising out of or resulting from:

   a) any actual, threatened or alleged assault or battery regardless of whether or not any action was undertaken or was alleged to have been undertaken in self-defense;

   b) the failure of any insured or anyone else for whom any insured is or could be held legally liable to prevent or suppress any assault or battery;

   c) the failure of any insured or anyone else for whom any insured is or could be held legally liable to render or secure medical treatment necessitated by any assault or battery;

   d) the rendering of medical treatment by any insured or anyone else for whom any insured is or could be held legally liable that was necessitated by any assault or battery;

   e) the negligent:

      (i) employment;

      (ii) investigation;

      (iii) supervision;

      (iv) training; or

      (v) retention;

      of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by 1. (a), (b), (c) or (d) above;

   f) any other act or omission, either leading up to, during or following any alleged assault or battery, on the part of the insured or anyone else for whom the insured may be legally responsible, in any way relating to, concurrently or in succession with, 1. (a), (b), (c), (d) or (e) above.

2. We shall have no duty to defend or indemnify any claim, demand, "suit", action, litigation, arbitration, alternative dispute resolution or other judicial or administrative proceeding seeking damages, equitable relief, injunctive relief, or administrative relief where:

   a) any actual or alleged injury arises out of any combination of an assault or battery-related cause and a non-assault or battery-related cause.

   b) any actual or alleged injury arises out of a chain of events which includes assault or battery, regardless of whether the assault or battery is the initial precipitating event or a substantial cause of injury.

   c) any actual or alleged injury arises out of assault or battery as a concurrent cause of injury, regardless of whether the assault or battery is the proximate cause of injury.

   d) any actual or alleged injury arises out of any act or omission in connection with the prevention or suppression of assault

or battery or any physical altercation.

(*Id*. (hereafter referred to as "the Assault and Battery Exclusion".)

### C. Tender of Defense of the *Ramirez* and *Palma* Actions

On August 1, 2017, Ms. Silva tendered her defense of the *Ramirez* Action to United Specialty Insurance Company who agreed to defend her pursuant to a reservation of rights based on the Assault and Battery Exclusion. (Dkt. No. 53-1 at ¶¶ 5-8.) The reservation of rights included a reservation of the right to recover defense expenses if it was later determined that United Specialty Insurance Company had no duty to defend or indemnify. (*Id*. at ¶¶ 6, 8.)

On January 4, 2018, Silva tendered her defense and indemnity of the *Palma* Action to United Specialty Insurance Company who agreed to defend her pursuant to a reservation of rights based on the Assault and Battery Exclusion. (Dkt. No. 53-1 at ¶¶ 9-10.) The reservation of rights included a reservation of the right to recover defense expenses if it was later determined that United Specialty Insurance Company had no duty to defend or indemnify. (*Id*. at ¶ 10.) United Specialty Insurance Company also accepted the tender of the defense and indemnity of Mr. Meza subject to the same reservations of rights. (*Id*. at ¶ 13.)

### D. Procedural Background

On December 20, 2017, Plaintiff United Specialty Insurance Company filed this action against Ms. Silva, Crusader Insurance Company (with whom Mr. Bonilla is insured), and the plaintiffs in the *Ramirez* Action. (Dkt. No. 1.) Plaintiff pled claims for declaratory relief regarding its duty to defend and indemnify Ms. Silva in the *Ramirez* Action and sought equitable relief against Ms. Silva and Crusader. A month later, Plaintiff filed a First Amended Complaint which added Zoila Melgar and Francisco Palma as Defendants and sought similar relief regarding the *Palma* Action. (Dkt. No. 11.) Shortly thereafter, Plaintiff voluntarily dismissed its claim as to Crusader. (Dkt. No. 21.) In October 2018, Plaintiff filed a Second Amended Complaint adding Mr. Meza as a Defendant following its acceptance of the tender of his defense and indemnity in relation to the *Palma* Action. (Dkt. No. 50.)

Plaintiff thereafter filed the now pending motion for summary judgment. (Dkt. No. 53.) Ms. Silva and Mr. Meza filed an opposition and Ms. Melgar and Mr. Palma filed a separate

1  opposition. (Dkt. Nos. 57, 58.) The plaintiffs' in the Ramirez action filed a separate joinder in

2  both oppositions. (Dkt. No. 59.) The motion for summary judgment came before the Court for

3  hearing on December 13, 2018.

**DISCUSSION**

Plaintiff moves for summary judgment on each of its claims contending that because of the Assault and Battery Exclusion it has no duty to either defend or indemnify Ms. Silva or Mr. Meza and that it is entitled to recover the costs of its defense in the *Ramirez* and *Palma* Actions thus far. Ms. Silva and Mr. Meza counter that the Assault and Battery Exclusion does not apply because the only claims against them in the *Ramirez* and *Palma* Actions are for negligence/premises liability. Mr. Palma and Ms. Melgar contend that the Assault and Battery Exclusion does not apply because a shooting in self-defense is not a battery. Neither argument is availing. The plain language of the Assault and Battery Exclusion and the weight of California authority interpreting similar exclusions demonstrates that the Assault and Battery Exclusion applies here.

**A. The Assault and Battery Exclusion**

"It has long been a fundamental rule of law that an insurer has a duty to defend an insured if it becomes aware of, or if the third party lawsuit pleads, facts giving rise to a potential for coverage under the insuring agreement." *Waller v. Truck Ins. Exchange*, 11 Cal.4th 1, 19 (1995). "This duty, [] applies even to claims that are groundless, false, or fraudulent, [and] is separate from and broader than the insurer's duty to indemnify." *Id*. (internal citation and quotation marks omitted). "Thus, when a suit against an insured alleges a claim that potentially could subject the insured to liability for covered damages, an insurer must defend unless and until the insurer can demonstrate, by reference to undisputed facts, that the claim cannot be covered. In order to establish a duty to defend, an insured need only establish the existence of a potential for coverage; while to avoid the duty, the insurer must establish the absence of any such potential." *Palp, Inc. v. Williamsburg Nat'l Ins. Co*., 200 Cal. App. 4th 282, 289 (2011) (internal citation omitted). "However, where there is no possibility of coverage, there is no duty to defend." *Waller*, 11 Cal.4th at 19.

While insurance contracts have special features, "they are still contracts to which the

ordinary rules of contractual interpretation apply." *Bank of the West v. Sup.Ct.*, 2 Cal.4th 1254, 1264 (1992). Generally, "[u]nder statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs interpretation" and that intent is to be inferred wherever possible solely from the written contract provisions. *Waller*, 11 Cal.4th at 18 (citing Cal. Civ. Code, §§ 1636, 1639.) "The 'clear and explicit' meaning of these provisions, interpreted in their 'ordinary and popular sense,' unless 'used by the parties in a technical sense or a special meaning is given to them by usage', controls judicial interpretation." *Id.* (quoting Cal. Civ. Code §§ 1644, 1638). "A policy provision will be considered ambiguous when it is capable of two or more constructions, both of which are reasonable." *Id*. In interpreting the language of an insurance policy, a court should give the words used their plain and ordinary meaning. *See Giddings v. Indus. Indem. Co.*, 112 Cal.App.3d 213, 218 (4th Dist.1980). "Any ambiguous terms are resolved in the insureds' favor, consistent with the insureds' reasonable expectations." *Safeco Ins. Co. of Am. v. Robert S.*, 26 Cal. 4th 758, 763 (2001) (internal citation and quotation marks omitted). Likewise, exclusionary clauses in insurance contracts are interpreted narrowly against the insurer and in favor of the insured. *See Arenson v. Nat'l Automobile & Cas. Ins. Co.*, 45 Cal.2d 81, 83 (1995).

Here, the Assault and Battery Exclusion excludes from coverage all bodily injury "arising out of" or "resulting from" "any actual, threatened or alleged assault or battery regardless of whether or not any action was undertaken or was alleged to have been undertaken in self-defense." (Dkt. No. 54-2 at 48.) California courts interpret this "arising out of" language broadly: "[t]he term 'arising out of' is a broad concept requiring only a slight connection or an incidental relationship between the injury and the excluded risk." *Southgate Recreation & Park Dist. v. California Assn. for Park & Recreation Ins.*, 106 Cal. App. 4th 293, 301 (2003) (internal citation and quotation marks omitted). Courts have "generally equated 'arising out of' with 'origination, growth or flow from the event.'" *Id.* (internal citation and quotation marks omitted). In considering such language, the court must "examine the conduct underlying the ... lawsuit, instead of the legal theories attached to the conduct." *Id.* (internal citation and quotation marks omitted).

Both the *Ramirez* and *Palma* Actions arise out of the shooting death of Mr. Palma—a

battery. *See Mount Vernon Fire Ins. Corp. v. Oxnard Hosp. Enter., Inc.*, 219 Cal. App. 4th 876, 882-84 (Cal. Ct. App. 2013); *see also People v. Trujillo*, 181 Cal. App. 4th 1344, 1357 (Cal. Ct. App. 2010) (noting that jurors could reasonably find that "a person with actual knowledge that he is shooting indiscriminately at a moving vehicle would realize that his conduct would directly, naturally, and probably result in a battery to anyone and everyone inside" the car) (emphasis added); *People v. Williams*, 26 Cal. 4th 779, 790 (Cal. 2001) (finding that the defendant "undoubtedly knew those facts establishing that his act by its nature would directly, naturally and probably result in a battery" where the defendant fired his gun at a truck knowing that another person was in the truck's near vicinity) (emphasis added).

In *Burlington Ins. Co. v. Alan*, No. C 12-03372 SI, 2013 WL 1819996, at *1 (N.D. Cal. Apr. 30, 2013), the court considered the merits of a similar claim for declaratory relief based on an insurer's duty to defend. There, a man was shot and killed outside of a nightclub. *Burlington Ins. Co.*, 2013 WL 1819996, at *1. The defendant-insured owned the building where the nightclub operated, but his insurance policy with the plaintiff-insurer excluded coverage for injuries "[a]rising in whole or in part out of any 'assault' or 'battery' committed or attempted by any person" or "[a]rising in whole or in part out of any attempt by any person to avoid, prevent, suppress, or halt any actual or threatened 'assault' or 'battery.'" *Id*. at *1-2. The deceased's survivors sued the insured in state court for negligence and wrongful death, and the insurer agreed to defend the insured under a reservation of rights. *Id*. The insurer then brought a federal action seeking a declaration that it had no duty to defend and reimbursement of expenses incurred defending the insured in the underlying action. *Id*. at *2. The court held that "because the crux of the [underlying] action arises 'in whole or in part' from an incident in which [the deceased] 'was shot during a skirmish among patrons'—a battery—the Assault or Battery Exclusion to the insurance policy applie[d,]" and the insurer had no duty to defend. *Id*. at *3; *see also Diamond*, 2011 WL 284490, at *4 (concluding that the plaintiff-insurer (1) demonstrated a proper subject of declaratory relief by alleging the existence of an insurance policy and a complaint in an underlying lawsuit, and (2) demonstrated an actual controversy by alleging that the policy's assault and battery exclusion negated the insurer's duty to defend in the underlying action and that it had

8

provided a defense under a reservation of rights).

Several other district court and California cases have concluded that an assault and battery exclusion precludes a duty to defend or indemnify where an incident involving an altercation with physical injury is at the core of a claim or suit, even if the underlying suit is couched in more general negligence allegations against the insured. *See Sys. XIX, Inc. v. United Capitol Ins. Co.*, No. 98-0481 MJJ, 1999 WL 447599, at *3-4 (N.D. Cal. June 23, 1999) (collecting and discussing cases). Thus, where "[t]he assault and battery is clearly the basis for the action against [the insured]; the fact that the claim also includes separate negligent acts by [the insured] cannot avoid the exclusion. Those alleged acts of negligence were based on the assault and battery committed by [the employee] on the plaintiffs. The exclusion therefore applies and [the insured] cannot rely on the allegations of negligence to create a potential for coverage." *Century Transit Systems v. American Empire Surplus Lines Ins. Co.*, 42 Cal.App. 4th 121, 128 (1996).

Defendants Silva and Meza's argument that these cases and the general rule construing assault and battery exclusions is inapplicable because the plaintiffs in the *Ramirez* and *Palma* Actions did not plead battery claims against them is unavailing. A policy exclusion for bodily injury "arising out of assault or battery, or out of any act or omission in connection with the prevention or suppression of assault or battery" "covers injury or damage arising when someone (not necessarily an insured) commits an act of assault or battery, or is in the course of committing an assault or battery." *Zelda, Inc. v. Northland Ins. Co.*, 56 Cal. App. 4th 1252, 1260-61 (1997). As in *Century Transit*, "the assault and battery is clearly the basis for the action" such that "the fact that the claim also includes separate negligent acts by [Silva and Meza] cannot avoid the exclusion." 42 Cal.App. 4th at 128.

Nor is there a reasoned basis for distinguishing these cases on the grounds that none involved a landlord-tenant relationship. Both *Mount Vernon Fire Ins. Corp. v. Oxnard Hosp. Enter., Inc.*, 219 Cal. App. 4th 876, 879 (2013), and *Burlington Ins. Co. v. Alan*, No. C 12-03372 SI, 2013 WL 1819996, at *1 (N.D. Cal. Apr. 30, 2013), addressed situations where the battery was committed by a third-party. *See Mount Vernon*, 219 Cal. App. 4th at 879 (holding that the assault and battery exclusion barred coverage for a negligence claim brought by the insured's employee

after a third-party threw flammable liquid on her and she was set on fire by a third-party on the insured's premises); *Burlington Ins. Co.*, 2013 WL 1819996, at *1 (holding that the assault and battery exclusion barred coverage for a negligence claim brought after a man was shot and killed outside of a nightclub owned by the defendant-insured). Again, the focus is on the exclusion's language— "we can only construe the exclusionary language one way: a suit based on assault and battery is excluded no matter who commits it. It is the happening of that event which compels application of the exclusion." *Century Transit*, 42 Cal. App. 4th at 126.

Defendants Silva and Meza's reliance on *Gray v. Zurich Insurance Company*, 65 Cal.2d 263(1966), is misplaced. *Gray* does not establish a general duty to defend intentional tort actions regardless of policy exclusions. Rather, in *Gray*, the California Supreme Court found potential for coverage when the policy had an exclusion for intentional acts and the insured was accused of assault and battery, but could have alternatively been liable for negligent use of force. *Id*. at 276-77. In contrast, an assault and battery exclusion "precludes coverage for an entire class of risks arising from specified conduct and does not turn on the intent of the insured at all. If the acts fell within the scope of the exclusion, coverage is barred regardless of [] intent." *Essex Ins. Co. v. Yi*, 795 F. Supp. 319, 324 n.2 (N.D. Cal. 1992). Further, the *Gray* court held that the intentional act exclusion at issue there was ambiguous. *Id.* at 271-73. The California Court of Appeals has held that an assault and battery exclusion substantially similar to that at issue here is *not* ambiguous. *Century Transit*, 42 Cal. App. 4th at 126; *see also State Farm Fire & Cas. Co. v. Abraio*, 874 F.2d 619, 621 (9th Cir. 1989) (citation omitted) ("When the state supreme court has not ruled definitively on a point, this court looks to decisions by intermediate appellate state courts for guidance" and should follow a California intermediate appellate court's decision "unless there is convincing evidence that the state supreme court would decide differently.").

At oral argument, Defendants Silva and Meza argued for the first time that provision 1.a of the Assault and Battery Exclusion was ambiguous and that the Court should find that the exclusion cannot be applied on that basis. Provision 1 and the subsections which follow are:

> **1.** This insurance does not apply to "bodily injury", "property damage", or "personal and advertising injury" arising out of or resulting from:

10

a) any actual, threatened or alleged assault or battery regardless of whether or not any action was undertaken or was alleged to have been undertaken in self-defense;

b) the failure of any insured or anyone else for whom any insured is or could be held legally liable to prevent or suppress any assault or battery;

c) the failure of any insured or anyone else for whom any insured is or could be held legally liable to render or secure medical treatment necessitated by any assault or battery;

d) the rendering of medical treatment by any insured or anyone else for whom any insured is or could be held legally liable that was necessitated by any assault or battery;

e) the negligent:

    **(i)** employment;

    **(ii)** investigation;

    **(iii)** supervision;

    **(iv)** training; or

    **(v)** retention;

of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by 1. (a), (b), (c) or (d) above;

f) any other act or omission, either leading up to, during or following any alleged assault or battery, on the part of the insured or anyone else for whom the insured may be legally responsible, in any way relating to, concurrently or in succession with, 1. (a), (b), (c), (d) or (e) above.

(Dkt. No. 54-2 at 48.) Defendants insist that subsections (b)-(d) only bar coverage for claims arising out of the conduct of the insured or conduct by those for whom the insured is legally responsible, and that given this limitation subsection (a) is ambiguous. Plaintiff counters that subsection (a) is not ambiguous—it sets the ceiling for the coverage bar: "any actual, threatened or alleged assault or battery"—and subsections (b)-(d) list specific examples. Plaintiff emphasizes that California courts consistently hold that assault and battery exclusions with broad provisions such as the one in 1.a. bar coverage regardless of who committed the battery.

For example, in *Century Transit*, 42 Cal. App. 4th at 128, the California Court of Appeals discussed *Ross v. City of Minneapolis*, 408 N.W.2d 910 (Minn. Ct. App. 1987), wherein the court rejected an argument that language in the exclusion providing that it applied "'whether or not [the battery was] committed by or at the direction of the insured' really mean[t] 'only if committed by

or at the direction of the insured.'" *Id*. at 913. The court labeled "[t]his argument [] specious at best" noting that "[i]t is axiomatic that terms of a contract are to be given their plain, ordinary, and popular meaning." *Id*. (holding that the exclusion applied to bar coverage in a negligence action brought against the owner of a sports stadium where an individual had been assaulted by an unknown third-party); *see also Century Transit*, 42 Cal. App. 4th at 128 (quoting *Cortinez v. Handford*, 490 So.2d 626, 628 (La.Ct.App. 1986) (stating that "the policy does not provide coverage for particular acts of negligence but provides coverage for damages arising out of an occurrence. The occurrence which gave rise to the damages here, an assault and battery, is specifically excluded from coverage.")). So too here. The plain language of subsection (a) bars coverage for "any assault"; that the following provisions provide additional basis on which coverage would be barred that might be subsumed within subsection (a) does not render the exclusion ambiguous.[4]

Finally, Defendants Palma and Melgar argue that the Assault and Battery Exclusion does not apply because shooting someone in self-defense is not a battery, or alternatively, that the exclusion is ambiguous because it only covers an "actual battery" and "there is no such thing as an

---

[4] At oral argument, Defendants cited to an Arizona District Court case not previously referenced in the briefs. Although under the local rules the Court generally does not consider legal arguments not raised by the parties in their briefs, *see* L.R. 7-3, the Court has reviewed *Fall v. First Mercury Ins. Co*., 225 F. Supp. 3d 842, 848 (D. Ariz. 2016), and finds it readily distinguishable. There, the court rejected the argument that the assault and battery provision would not preclude coverage of a negligent training and supervision claim because "the event giving rise to the underlying litigation is an alleged assault and battery, the plain language of the Policy's exclusion precludes coverage for *all* of Plaintiff's underlying claims." *Id*. at 847 (emphasis added). The court nonetheless went on to deny summary judgment because under Arizona's "'reasonable expectations' doctrine, Arizona courts will not enforce boilerplate provisions of an insurance contract when the insurer has reason to believe that the insured would not have agreed to those terms." *Id*. at 848. Because the nightclub's owner had submitted an affidavit attesting that he had no knowledge of the assault and battery provision, and that if he had, he would have insisted on obtaining coverage from another carrier, there was a question of material fact as to whether the insured believed he would be covered. *Id*. at 849. No similar showing has been made here as to the law or the facts. Defendants have not offered an affidavit from Ms. Silva or otherwise demonstrated any dispute as to a material fact. Further, under California law "the doctrine of reasonable expectation of coverage only operates when there is an ambiguity. In determining whether there is an ambiguity, the court must read words in their ordinary sense, and any ambiguity cannot be based on a strained interpretation of the policy language." *State Farm Mut. Auto. Ins. Co. v. Khoe*, 884 F.2d 401, 406 (9th Cir. 1989) (internal citation and quotation marks omitted). As discussed at length above, California courts have routinely held that assault and battery exclusions such as the one at issue here are not ambiguous. *Century Transit*, 42 Cal. App. 4th at 126.

12

actual battery in self-defense." (Dkt. No. 58 at 4.) These defenses, too, are unpersuasive. The relevant portion of the exclusion states that "[t]his insurance does not apply to bodily injury" "arising out of or resulting from: any actual, threatened or alleged assault or battery *regardless of whether or not any action was undertaken or was alleged to have been undertaken in self-defense.*" (Dkt. No. 54-2 at 16 (emphasis added).) Even without that unambiguous language, California courts interpreting assault and battery exclusions have rejected similar self-defense arguments: "Even if such a self-defense argument had a factual basis, the exclusion would still apply. An act of self-defense necessarily involves resistance to an assault and battery by another. Thus, the claim against the insured would still be based upon or arise from an assault and battery." *Century Transit*, 42 Cal.App.4th at 129, n.8. Thus, the alleged shooting underlying the claims here was a battery regardless of whether it was done in self-defense.

Defendants' insistence that a battery taken in self-defense is not a battery and therefore the exclusion language is ambiguous fails. None of the cases cited by Defendants so hold. (Dkt. No. 58 at 3.) Indeed, as explained above, California law is to the contrary. *See also Zelda*, 56 Cal.App.4th at 1262 (noting that were "two versions of the altercation... The complaints and letter portray an unwarranted assault and battery by Pascale upon Trujillo in which Pascale threw Trujillo to the ground and kicked him. By contrast, the police report indicates that Trujillo first assaulted Pascale by throwing a punch, and Pascale responded in self-defense. Both versions of the altercation trigger the exclusion. Under each version, Trujillo's injuries stemmed from an unwarranted assault.").

Accordingly, the *Ramirez* and *Palma* Actions "aris[e] out of or result[] from" a battery such that the plain language of the Assault and Battery Exclusion prohibits coverage for the incident giving rise to these wrongful death actions. Thus, there is no potential for coverage of the wrongful death claims, and Plaintiff therefore has no duty to defend or indemnify Defendants Silva or Meza in the underlying *Ramirez* and *Palma* Actions.

### B. Plaintiff is Entitled to Recover its Defense Costs

Defendants do not appear to dispute that "[a]n insurer may obtain reimbursement for defense costs" as long as the it only seeks reimbursement for defense costs for those "claims that

13

are not even potentially covered." *Buss v. Superior Court*, 16 Cal. 4th 35, 57 (1997); *see also Scottsdale Ins. Co. v. MV Transp.*, 36 Cal.4th 643, 659-60 (2005) ("California law clearly allows insurers to be reimbursed for attorney's fees' and other expenses paid in defending insureds against claims for which there was no obligation to defend."). Further, if an insurer defends under reservation of right to seek reimbursement of defense and indemnity costs, it may "seek reimbursement for payments expended if noncoverage is ultimately proven." *Truck Ins. Exchange v. Superior Court*, 51 Cal.App.4th 985, 994 (1996).

Here, Plaintiff assumed the defense of the claims in the *Ramirez* and *Palma* Actions with an express reservation of its right to seek reimbursement if it was subsequently determined that it had no duty to defend. (Dkt. No. 53-1 at ¶¶ 6, 10; Dkt. No. 54-2 at 74 (Ex. 3); Dkt. No. 54-2 at 112 (Ex. 7).) Plaintiff thus properly preserved its right to seek reimbursement. Further, Plaintiff attests that it has paid $28,293.76 for the costs of defense thus far. (Dkt. No. 53-1.) Plaintiff has submitted billing records and copies of checks payable to JAMS and the law firm of Bennett, Samuelsen, Reynolds & Allard which reflect payments for "Insureds: Silva, Concepcion" regarding "Claimant: Palma, Alvaro." (Dkt. No. 54-2 at 165 (Ex. 12).) Because Defendants do not dispute or otherwise address this evidence, Plaintiff has carried its burden of establishing by a preponderance of evidence that it is entitled to recover $28,293.76 as reimbursement for defense costs for the uncovered claims in the *Ramirez* and *Palma* Actions.

# CONCLUSION

For the reasons stated above, the Court GRANTS Plaintiff's motion for summary judgment. The Court will enter separate judgment in Plaintiff's favor.

This Order disposes of Docket No. 53.

**IT IS SO ORDERED.**

Dated: December 14, 2018

JACQUELINE SCOTT CORLEY
United States Magistrate Judge